IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

TERENCE CHRISTOPHER POWELL                           PLAINTIFF

v.                                 Civil No. 2:20-cv-02185

DEPUTY ARNOLDUSSEN and                         DEFENDANTS
CORPORAL RISLEY

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This is a civil rights action filed by Terence C. Powell ("Powell") pursuant to 42 U.S.C. § 1983. Powell proceeds *pro se* and *in forma pauperis*. Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable P. K. Holmes, III, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation on a Motion for Partial Summary Judgment filed by the Defendants. (ECF No. 25). Powell filed a timely Response. (ECF No. 29).

Powell contends his constitutional rights were violated while he was incarcerated at the Sebastian County Detention Center ("SCDC"). Specifically, Powell asserts the following claims: (1) his First Amendment right to the free exercise of religion was violated on September 23, 2020, when Deputy Arnoldussen refused Powell a razor because he was on lock down; (2) his due process rights were violated by Corporal Risley moving Powell to lock down on numerous occasions without notice and an opportunity to be heard; (3) medical staff were deliberately indifferent to Powell's serious medical needs when he was placed on a diabetic diet; and, (4) Corporal Risley used excessive force against him on October 4, 2020.

The instant Motion for Partial Summary Judgment addresses the first three claims. Corporal Risley has not moved for summary judgment on the excessive force claim.

1

I.     BACKGROUND

Powell was booked into the SCDC in April of 2020. (ECF No. 27-5 at 10). On December 3, 2020, Powell filed a notice of change of address to the Cummins Unit of the Arkansas Division of Correction. (ECF No. 8).

The SCDC has a grievance procedure. (ECF No. 27-3 at 1-4). Inmates are allowed to file grievances using kiosks located in the pods. (*Id*. at 2). There is no record of Powell having filed a grievance concerning his claims that his religious rights were violated when he was denied access to a razor. (ECF No. 27-1 at 1).

Powell is a Muslim. (ECF No. 27-5 at 7). Powell testified at his deposition that he is required by the Sunnah to shave his pubic and armpit hair and to clean himself before he prays. (*Id*. at 9, 13; ECF No. 1 at 4). From April 2020 until September 2020, Powell testified he had been given razors regularly. (ECF No. 27-5 at 10). On September 23, 2020, Powell maintains Deputy Arnoldussen refused to provide him with a razor. (ECF No. 1 at 4). Powell was advised he was in disciplinary segregation and would not be provided with a razor. (ECF No. 27-5 at 10). Powell had previously been on disciplinary segregation and was sometimes given a razor and other times not. (*Id*.). Powell believes the lock down policy also violates his First Amendment rights because he cannot shower. (ECF No. 27-5 at 17). He could not "clean" himself. (*Id*.). Powell testified that there were times when he went three days without a shower. (*Id*. at 18). When he was "dirty," Powell testified his prayers were not valid. (*Id*. at 14-15, 18).

Powell indicates Corporal Risley put him on lock down, for no longer than three days at a time, on numerous occasions for things that did not occur. (ECF No. 27-5 at 19-24). Deputy Arnoldussen never put him on lock down. (*Id*. at 20).

According to Deputy Arnoldussen, Powell was not given a razor while on administrative or disciplinary segregation during his incarceration at the SCDC. (ECF No. 27-4 at 1). Powell testified he went without a razor for between two and four weeks. (ECF No. 27-5 at 11-12). Razors were disbursed on Sundays. (*Id*. at 12). When Deputy Arnoldussen worked on Sunday, Powell did not receive a razor. (*Id*.).

Powell was offered clippers to shave his hair once a week. (ECF No. 27-4 at 1). Powell refused to use the clippers. (*Id*.). Powell testified he did not "want to use no clippers that other inmates is using." (ECF No. 27-5 at 12). Powell indicated Deputy Arnoldson "didn't even clean them or bring them to me, and I wasn't gonna use them." (*Id*.). Other than not being provided a razor while on lock down, Powell testified he was allowed to practice his religion. (ECF No. 27-5 at 9).

Medical care at the SCDC is provided by a contractor, Turn Key Health Clinics. (ECF No. 27-1 at 1). Powell testified he went to medical to get some blood pressure medication and they changed his diet "on their own." (ECF No. 27-5 at 41). He indicates he was told that his diet had been changed because of his high blood pressure. (*Id*.). Powell, however, felt that the sugar was taken out of his food "because [of] the incidents I had with the guards." (*Id*.). Corporal Risley and Deputy Arnoldussen had nothing to do with the diet he was served and were not involved in the provision of medical care at the SCDC. (*Id*. at 40-42).

On October 4, 2020, Powell maintains Corporal Risley used excessive force when he discharged a JPX pepper spray gun in Powell's face. (ECF No. 1 at 6). The incident began when Powell was told by multiple deputies that he needed to undress and turn in a pair of gray sweatpants he was wearing under his orange uniform. (ECF No. 27-5 at 24). The gray sweatpants were not

county issued but Powell testified he came into the SCDC with them, and he was allowed to keep them from April until October. (*Id*. at 25).

Deputy Cox first asked Powell to turn in the sweatpants and he refused. (ECF No. 27-5 at 26). Powell was in his cell at the time and held the door closed. (*Id*.). Deputy Cox asked several times and Powell kept refusing. (*Id*.). Deputy Toon was then called, and he asked Powell to turn in the sweatpants. (*Id*.). Powell kept refusing and Corporal Risley was contacted. (*Id*.). Powell testified he was not complying because he was scared. (*Id*. at 27). He further testified that: "I didn't comply because I came in the jail with the sweatpants on and several inmates had them on. They knew I had these pants. . . . . So I refused to give them the sweatpants. I had them this whole time." (*Id*.).

After Corporal Risley arrived, Powell, despite repeated orders to do so, continued to refuse to give the officers the sweatpants. (ECF No. 27-5 at 27-30). When he saw Corporal Risley had a JPX gun, Powell testified that he laid on the floor and said he was not resisting. (*Id*. at 31). Corporal Risley again asked for the pants and Powell replied: "You ain't getting nothing." (*Id*. at 32). At this point, Powell was placed in handcuffs. (*Id*.). Corporal Risley and Deputy Toon took Powell to the intake shower to be searched. (*Id*.). The handcuffs were removed, and Powell was again ordered to give them the sweatpants. (*Id*.). Powell continued to refuse. (*Id*. at 32-33). Powell had on an orange jumpsuit, an orange sweatshirt, an orange t-shirt, orange sweatpants, the gray sweatpants, and multiple pairs of socks. (*Id*. at 33). According to Powell, after the handcuffs were removed, he backed up into the shower. (*Id*.). Powell states he did not attack the officers or appear to want to attack the officers. (*Id*. at 34). Despite statements in Deputy Toon's incident report that Powell attempted to "gain control" of Corporal Risley's and Deputy Toon's hands,[1]

---

[1] *See* (ECF No. 29 at 2) (Sebastian County Sheriff's Office incident report).

Powell maintains he took no such action. (*Id*. at 38). Corporal Risley continued to order Powell to take off the gray sweatpants. (*Id*. at 34). Powell continued to refuse and Corporal Risley ultimately discharged the JPX pepper spray gun into Powell's face. (*Id*.). No argument is made that Deputy Arnoldussen was involved in the alleged use of excessive force.

According to Powell, he then told Corporal Risley he was under the influence of barbiturates so the officers would leave him alone. (ECF No. 27-5 at 36). Powell said he couldn't breathe; they were continuing to try to attack him; and he just said something to get them to leave him alone. (*Id*.). After the officers took the sweatpants, Powell testified they tried to keep him in the dressing room with "all that mace." (*Id*.). Although he initially denied being given an opportunity to decontaminate, Powell testified that he was given something to wipe with and was able to rinse his face with water. (*Id*. at 36-37). He was also seen by medical staff approximately five minutes after he had been sprayed. (*Id*.).

Powell testified the JPX gun does not simply emit a spray but instead shoots a capsule. (ECF No. 27-5 at 38). Powell testified his face was cut as a result of being shot at close range with the "plastic bullet" or "capsule." (*Id*.). He claims he now has a scar on his right cheekbone. (*Id*. at 39-40). Powell also asserts he suffered vision problems as a result of the spray. (*Id*. at 39). He did not receive medical attention for the cut, the scarring, or the vision problems. (*Id*.).

Powell admitted to having a history of having been in three or four altercations with other inmates but said he was the one being assaulted. (ECF No. 27-5 at 28). Powell testified about two occasions when he felt officers used unjustified force against him. (*Id*. at 29).

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, the record "shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

Defendants move for summary judgment on the following grounds: (1) Defendants maintain Powell failed to exhaust his administrative remedies prior to filing his denial of freedom of religion claim; (2) Defendants assert Powell was not denied due process; (3) Defendants argue that neither of them was involved in Powell's medical care; (4) Defendants maintain they are entitled to the protections afforded by qualified immunity; and, (5) Defendants argue there is no basis for official capacity liability.

### A.  Exhaustion—Freedom of Religion

Section 1997e(a) provides that: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Exhaustion is mandatory.  *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002).  "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal quotation marks and citation omitted).  A prisoner's remedies are exhausted "when [the] inmate pursues the prison grievance process to its final stage and receives an adverse decision on the merits."  *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012).  Non-exhaustion is an affirmative defense.  *Jones*, 549 U.S. at 211-12.

Defendants have provided an affidavit asserting that Powell filed no grievances regarding his religious rights being violated by the failure of Defendants to provide him with a razor while he was on lock down.  Powell does not dispute this in his response to the Summary Judgment Motion.  Defendants are therefore entitled to summary judgment on the First Amendment Freedom of Religion claim.

### B.  Due Process

Corporal Risley merely makes the blanket statement that Powell was not denied due process.  However, Corporal Risley does not further address this issue.  The Court is provided with no information regarding Powell's placement in administrative or disciplinary segregation by Corporal Risley on multiple occasions.  The only evidence before the Court in this regard is Powell's testimony that he was improperly placed on lock down on numerous occasions without procedural due process.

7

"The Supreme Court has outlined the procedures correctional facilities must follow to conduct an impartial due process hearing on a disciplinary matter." *Hartsfield v. Nichols*, 511 F.3d 826, 830 (8th Cir. 2008) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974)). These procedures include written notice of the charges, a brief period to prepare, a written statement of the evidence relied on and reasons for the disciplinary action, and the ability for the inmate to call witnesses and present documentary evidence. *Id.*; *see also Dible v. Scholl*, 506 F.3d 1106, 1110 (8th Cir. 2007).

Inmates placed in administrative segregation for non-punitive reasons are also entitled to meaningful reviews of their detention. *Williams v. Hobbs*, 662 F.3d 994, 997 (8th Cir. 2011). Meaningful due process includes advising the inmate of the reason it was believed he posed a threat to security. *Id*. at 1009. Here, the Court does not even know if Powell was on convicted status on one or more of these occasions. This is important because the Supreme Court in *Sandin v. Conner*, 515 U.S. 472 (1995) made clear that a convicted prisoner does not have a right to procedural due process in connection with temporarily being placed in administrative segregation. *Id*., 515 U.S. at 486-87.

Corporal Risley is not entitled to summary judgment on this claim. Powell does not contend Deputy Arnoldussen improperly placed him in segregation.

### C. Denial of Medical Care

Defendants are entitled to summary judgment on this claim. Powell testified that neither Defendant was involved in the provision of medical care or in deciding what diet he should receive.

### D. Qualified Immunity

Defendants also contend they are entitled to qualified immunity. As discussed above, the freedom of religion claim is being dismissed on failure to exhaust grounds. The denial of medical

8

care claim is being denied as Powell makes no arguments the named Defendants were involved in the provision of medical care or in changing his diet. This leaves only the possibility of Corporal Risley being entitled to qualified immunity on the due process claim.[2]

"Government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341-43 (1986)).

The qualified immunity inquiry consists of two questions: "(1) whether the facts alleged or shown, construed in the light most favorable to the Plaintiff, establish a violation of a constitutional right; and (2) whether that constitutional right was clearly established as of the time of the relevant conduct such that a reasonable official would have known that his actions were unlawful." *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009) (citation omitted). The Court can answer the questions in either order. *Pearson v. Callahan,* 555 U.S. 223, 242 (2009). A § 1983 plaintiff may defeat qualified immunity only if the answer to both questions is yes. *Boude v. City of Ramore*, 855 F.3d 930, 933 (8th Cir. 2017) (citation omitted).

Here, the summary judgment record is devoid of sufficient factual material for the Court to properly analyze whether a constitutional violation has occurred. Additionally, without the factual background, the Court cannot determine whether a reasonable official would have known that his actions were unlawful. Corporal Risley is not entitled to qualified immunity.

---

[2] Corporal Risley has not moved for summary judgment on the excessive force claim.

9

### E. Official Capacity Claim

A suit against an employee in his or her official capacity is tantamount to an action directly against the employing governmental entity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). In other words, it is a suit against Sebastian County. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an 'official municipal policy,' (2) an unofficial 'custom,' or (3) a deliberately indifferent failure to train or supervise." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 699 (8th Cir. 2016) (citations omitted).

In this case, Powell maintains the policies of the SCDC were violated in connection with his being placed on lock down and when excessive force was used against him. This does nothing to establish the existence of an unconstitutional policy or an official custom that was the moving force behind the alleged constitutional violations. In fact, it belies the existence of any such unconstitutional policy or custom. Powell makes no argument that a failure to train or supervise resulted in the alleged constitutional violations. Therefore, Defendants are entitled to summary judgment on the official capacity claims.

### IV. CONCLUSION

For these reasons, it is recommended that Defendants' Motion for Partial Summary Judgment (ECF No. 25) be **GRANTED in part and DENIED in part.**

Specifically, it is recommended that the Motion be **GRANTED** with respect to:

(1) the Freedom of Religion claim;

(2) the denial of medical care claim; and

(3) the official capacity claims.

It is recommended that the Motion be **DENIED** with respect to the due process claim.

This would result in the dismissal of all claims against Deputy Arnoldussen. This leaves for later resolution the individual capacity due process and excessive force claims against Corporal Risley.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 1st day of September 2021.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE